# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARIO MENJIVAR GARCIA, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> SKANSKA USA BUILDING, INC., *et al.*, <br><br> *Defendants*. | Civil Action No. 17-cv-0629 (DLF) |

## MEMORANDUM OPINION

Mario Menjivar Garcia and his coworkers allege that their employers deliberately underpaid them for carpentry work on public buildings in the District of Columbia. The employers ask this Court to dismiss the suit under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim, arguing that the Davis-Bacon Act forecloses any cause of action—whether under the Act itself, the Fair Labor Standards Act, or state labor laws—outside the Act's administrative scheme. Because the Davis-Bacon Act is not so expansive, the Court will deny the motion.

## I. BACKGROUND

### A. Facts[1]

Mario Menjivar Garcia and his coworkers Alfonso Fuentes Castro, Elfidio Alvarado Barrera, Gabriel Ramirez Brito, and Javier Barrera Salinas—collectively, "Garcia"—worked for Skanska USA Building, Inc., P.O.S.T. LLC, and Alvin Smith—collectively, "employers"—on

---

[1] The facts here are recited as alleged in Garcia's First Amended Complaint, Dkt. 13, and are assumed true, as they must be in considering a motion to dismiss. *See Ctr. for Responsible Sci. v. Gottlieb*, 311 F. Supp. 3d 5, 8 (D.D.C. 2018).

various public buildings in the District of Columbia between 2014 and 2017.[2] *See* Compl. ¶¶ 2, 19, 38, 56, 75, 93. The employers agreed to hire and pay Garcia "as a carpenter," by which Garcia understood that he would be paid "at least the legal prevailing wage for a carpenter." *Id.* ¶¶ 21–22, 40–41, 58–59, 77–78, 95–96. The employers' contracts with the District of Columbia also "promised that workers on these projects would be paid the appropriate prevailing wage." *Id.* ¶ 134. For years, however, Garcia was paid hourly wages below the prevailing wage and fringe benefits for a carpenter as determined by the Department of Labor under the Davis-Bacon Act. *See id.* ¶¶ 33, 52, 70, 89, 107, 132. And, despite "often" working over forty hours per week, Garcia was "often not" paid overtime wages (time-and-a-half) for each hour over forty. *Id.* ¶¶ 26–27, 45–46, 63–64, 82–83, 100–01.

Garcia sued to recover overtime wages under the Fair Labor Standards Act and the District of Columbia Minimum Wage Act Revision Act, as well as "promised prevailing wages and fringe benefits" under the District of Columbia Wage Payment and Collection Law. *Id.* ¶ 6–7. The employers now move to dismiss, arguing the Davis-Bacon Act—specifically, its administrative remedial scheme—forecloses Garcia's claims. Dkt. 17.

**B. Relevant Statutes**

    1. Davis-Bacon Act

The Davis-Bacon Act sets requirements for certain contracts with the federal government or the District of Columbia relating to construction on public buildings or public works. As relevant here, the "advertised specifications" for covered contracts must "contain a provision stating the minimum wages to be paid various classes of laborers and mechanics," and those

---

[2] The allegations in the complaint differentiate among the five employees, three employers, and five projects. Because none of these distinctions matters for purposes of the employers' motion to dismiss, the Court refers to the parties and projects collectively.

minimum wages "shall be based on the wages the Secretary of Labor determines to be prevailing" for each class of worker in a given market. 40 U.S.C. § 3142(a), (b). The eventual contract itself must then contain three stipulations: (1) that the contractor will pay covered workers at least the prevailing rates as recited in the advertised specifications, any contrary agreement between the contractor and his workers notwithstanding; (2) that the contractor will publicly post the wage scale at work; and, most important here, (3) that

> there may be withheld from the contractor so much of accrued payments as the contracting officer considers necessary to pay to laborers and mechanics employed by the contractor or any subcontractor on the work the difference between the rates of wages required by the contract to be paid laborers and mechanics on the work and the rates of wages received by the laborers and mechanics and not refunded to the contractor or subcontractors or their agents.

*Id.* § 3142(c). Under this contractual provision, a government contracting officer can ensure that workers are paid at the Department of Labor's prevailing rates—and if the workers are underpaid, the contracting officer can withhold payment to the contractor and use the withheld funds to make up the difference. If the withheld funds are insufficient, "the laborers and mechanics have the same right to bring a civil action and intervene against the contractor and the contractor's sureties as is conferred by law on persons furnishing labor or materials." *Id.* § 3144(a)(2). The contracting officer may also terminate a contract if he learns that any covered worker has been underpaid. *See id.* § 3143. Most courts to have examined the issue have held that the Davis-Bacon Act does not create a private right of action before a plaintiff has navigated the administrative scheme. *See infra* note 4.

    2.  Fair Labor Standards Act

The Fair Labor Standards Act provides, *inter alia*, that "no employer shall employ any of his [covered] employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not

3

less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). An employee's "regular rate" is "deemed to include all remuneration for employment paid to, or on behalf of, the employee, but shall not be deemed to include" various items such as gifts, vacation and sick pay, various insurance payments, and certain other exempted items. *Id.* § 207(e). The FLSA imposes liability on employers who violate §§ 206 and 207 "in the amount of [the employee's] unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." *Id.* § 216(b). And it explicitly authorizes a private right of action for aggrieved employees: "An action to recover the liability prescribed in the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." *Id.*

3. District of Columbia Minimum Wage Act Revision Act

In addition to the federal FLSA, the District of Columbia has enacted its own minimum wage law: the District of Columbia Minimum Wage Act. The DCMWA largely mirrors the FLSA, but is more generous in its remedies for covered employees. Subject to certain exemptions, the DCMWA forbids any employer from "employ[ing] any employee for a workweek that is longer than 40 hours, unless the employee receives compensation for employment in excess of 40 hours at a rate not less than 1 ½ times the regular rate at which the employee is employed." D.C. Code § 32-1003(c). Penalties are steep: "[A]ny employer who pays any employee less than the wage to which that employee is entitled under this subchapter shall be liable to that employee in the amount of the unpaid wages, statutory penalties, and an additional amount as liquidated damages equal to treble the amount of unpaid wages." *Id.* § 32-

4

1012(b)(1). Like the FLSA, the DCMWA creates a private right of action for aggrieved employees. *See id.* §§ 32-1012(a), 32-1308.

### 4. District of Columbia Wage Payment and Collection Law

Another District of Columbia law, the District of Columbia Wage Payment and Collection Law, requires employers to pay employees "all wages earned" on regular paydays, D.C. Code § 32-1302, and defines "wages" as "all monetary compensation after lawful deductions, owed by an employer, whether the amount owed is determined on a time, task, piece, commission, or other basis of calculation." *Id.* § 32-1301(3). "Wages" are specifically defined to include "[o]ther remuneration promised or owed . . . [p]ursuant to District or federal law," as well as pursuant to "a contract for employment, whether written or oral" or "a contract between an employer and another person or entity." *Id.* § 32-1301(3)(E); *see also id.* § 32-1301(3)(A)–(D) (further defining wages to include bonuses, commissions, fringe benefits paid in cash, and overtime premiums). The DCWPCL instructs that, "[i]n enforcing the provisions of this chapter, the remuneration promised by an employer to an employee shall be presumed to be at least the amount required by federal law, including federal law requiring the payment of prevailing wages, or by District law." *Id.* § 32-1305. The DCWPCL authorizes a private right of action and, like the DCMWA, imposes a steep set of consequences for violations, including treble damages. *Id.* § 32-1308.

## II. LEGAL STANDARD

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In analyzing a 12(b)(6) motion, the Court will construe the

complaint liberally in favor of the plaintiff and will grant the plaintiff "the benefit of all inferences that can be derived from the facts alleged," but the Court need not accept legal conclusions or inferences unsupported by the facts alleged. *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994); *see also Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002); *Ctr. for Responsible Sci. v. Gottlieb*, 311 F. Supp. 3d 5, 8 (D.D.C. 2018). The Court will grant a motion to dismiss only where a plaintiff's "well-pleaded factual allegations," even if true, do not "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

### III. ANALYSIS

Garcia alleges three counts under three laws: (1) failure to pay overtime wages under the Fair Labor Standards Act (FLSA); (2) failure to pay overtime wages under the District of Columbia Minimum Wage Act Revision Act (DCMWA); and (3) failure to pay "all wages due, including prevailing wages and fringe benefits," under the District of Columbia Wage Payment and Collection Law (DCWPCL). Compl. at 17–19. But the employers urge that a *fourth* law, the Davis-Bacon Act (DBA), requires dismissal of Garcia's claims. The employers' argument proceeds in two steps: *first*, the DBA does not authorize a private right of action (at least not before a plaintiff has navigated the administrative scheme); and, *second*, "a worker cannot bypass the DBA by seeking unpaid and overtime wages under another federal law or state laws." Dkt. 17 at 2.

This Court is not the first to confront the interaction between the DBA and other federal or state wage and hour laws, and there is a division of authority among the circuits. The D.C. Circuit has yet to settle the issue, so it is this Court's duty to independently analyze the relevant statutes and render a decision based on the best reading of the statutory text. Based on a review of the relevant statutes, the Court concludes that the DBA does not foreclose causes of action

6

under the FLSA or state (or, as in this case, District) law, at least where a plaintiff does not challenge the Department of Labor's classification or wage-setting decisions.

The Fourth Circuit recently confronted this issue. In *Amaya v. Power Design, Inc.*, the Fourth Circuit concluded that "Congress intended the FLSA to apply broadly notwithstanding any overlap with other labor statutes." 833 F.3d 440, 445 (4th Cir. 2016). The *Amaya* court found instructive *Powell v. U.S. Cartridge Co.*, 339 U.S. 497 (1950), in which the Supreme Court determined that employees could pursue FLSA actions for unpaid overtime even under a contract subject to the Walsh-Healey Act, which regulates federal contract employment. *See Amaya*, 833 F.3d at 444–45. It also noted that none of the FLSA's listed exemptions exempted the plaintiffs, and that the FLSA's text specifically states that "[n]o provision of this chapter or of any order thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter or a maximum work week lower than the maximum workweek established under this chapter." 29 U.S.C. § 218(a). The Fourth Circuit thus allowed the FLSA claims to go forward. And in calculating the wages for those FLSA claims, the *Amaya* court interpreted "regular rate" under the FLSA to refer to the prevailing rate under the DBA. *Amaya*, 833 F.3d at 447 (citing 40 U.S.C. § 3142(e)).[3]

---

[3] Two decisions by other judges on this Court have also allowed FLSA and state-law claims to proceed where the work at issue was covered by the DBA, though neither of those decisions dealt squarely with claims for DBA-mandated prevailing wages. In *Ayala v. Tito Contractors, Inc.*, Judge Boasberg allowed claims under the DCWPCL where "[p]laintiffs d[id] not rely on a failure to pay *prevailing* wages" but instead alleged that "Defendants underreported and paid *nothing at all* to two Plaintiffs for certain hours worked." 82 F. Supp. 3d 279, 287 (D.D.C. 2015). Under those circumstances, Judge Boasberg concluded that the fact "[t]hat the improperly discounted hours [were] subject to prevailing wages is of no moment." *Id.* And in *Perez v. C.R. Calderon Construction, Inc.*, Chief Judge Howell used DBA-mandated rates in calculating damages under the FLSA, but she did so because the workers were "entitled to the

The Court finds the *Amaya* decision convincing. There is a difference between the lack of a private right of action and a congressional intent to foreclose other, extant rights of action. Even assuming—as Garcia concedes here, Dkt. 20 at 1—that the DBA lacks a private right of action of its own, it does not follow that Congress intended to shut down all other avenues of relief. *Cf. Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 582 (7th Cir. 2012) ("When the federal court's jurisdiction over state-law claims is based on diversity of citizenship, . . . the absence of a private right of action in a federal statute actually weighs *against* preemption."). To make that separate showing, the employers would need to point to an affirmative congressional intent to displace other federal and state laws.

But the evidence of intent runs the other way. First, there is no obvious conflict between the DBA, on the one hand, and the FLSA, DCMWA, and DCWPCL, on the other. The DBA nowhere claims to be the exclusive method of recovering owed wages. The Supreme Court has noted in a similar context that the FLSA's scope "was stated in terms of substantial universality amply broad enough to include employees of private contractors working on public projects" and its terms make only "narrow and specific" exceptions. *Powell*, 339 U.S. at 516–17; *see also Amaya*, 833 F.3d at 444–45. And the employers here have not pointed to any scenario in which "compliance with one Act makes it impossible to comply with" any of the others. *Cf. Powell*, 339 U.S. at 519.

Second, and further underscoring the laws' compatibility, Congress was well aware of the overlapping nature of federal and state labor laws. *See Amaya*, 833 F.3d at 445. The DBA itself

---

wage rate that they were promised upon being hired and that they reasonably expected applied over the duration of their work," which happened to be the DBA-mandated prevailing wages for a carpenter—irrespective of "how DOL would classify the plaintiffs' correct wage rate." 221 F. Supp. 3d 115, 149 (D.D.C. 2016).

guides some of that interaction, instructing that "[i]n determining the overtime pay to which a laborer or mechanic is entitled under *any federal law*, the regular or basic hourly rate of pay . . . is deemed to be the rate computed under section 3141(2)(A) of this title." 40 U.S.C. § 3142(e) (emphasis added). The Department of Labor has similarly observed that "[l]aborers and mechanics performing work subject to such predetermined minimum wages may, if they work overtime, be subject to overtime compensation provisions of other laws which may apply concurrently to them, including the Fair Labor Standards Act," 29 C.F.R. § 778.6, and that "in no event can the regular or basic rate upon which premium pay for overtime is calculated under the aforementioned Federal statutes [including the FLSA] be less than the amount determined by the Secretary of Labor as the basic hourly rate (i.e. cash rate) under section 1(b)(1) of the Davis-Bacon Act," 29 C.F.R. § 5.32(a). The FLSA shows the same congressional awareness of statutory overlap, and evinces a congressional intent that, where possible, courts enforce labor laws concurrently. *See* 29 U.S.C. § 218(a) ("No provision of this chapter or of any order thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter . . . .").

And third, even if the statutes were less clear, a tie would go to Garcia. Courts generally presume that Congress does not cut back federal statutes or preempt state ones surreptitiously. *See Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 664 (2007) (presumption against implied repeal); *Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (presumption against preemption); *see also Grochowski v. Phoenix Constr.*, 318 F.3d 80, 90–91 (2d Cir. 2003) (Lynch, J., dissenting) (when Congress required certain contractual promises to be included in DBA contracts, "it must have assumed [those contracts] would be enforceable, like any other

contracts, under state law"). The FLSA, the DCMWA, and the DCWPCL all create express rights of action for aggrieved employees. If Congress meant to revoke these in every DBA-covered contract, longstanding precedent required it to say so clearly.

The Court recognizes that its decision conflicts with the Second Circuit's holding in *Grochowski v. Phoenix Construction*, 318 F.3d 80 (2d Cir. 2003), on which the employers here primarily rely. In *Grochowski*, nine workers employed as roofers and bricklayers on three public works construction projects sued their employers for unpaid prevailing wages and overtime pay, invoking the FLSA, the Contract Work Hours and Safety Standards Act (another federal law), and state common-law claims. *Id.* at 83–84. The Second Circuit first concluded—pointing to "the great weight of authority"[4]—that there is no private right of action under the DBA. *Id.* at 85. It then noted that, in another case, the Second Circuit had determined that while there was no private right of action under an analogous federal law (the Housing Community and Development Act), there *was* a right of action to enforce that law under 42 U.S.C. § 1983. *Id.* (citing *Chan*, 1 F.3d at 103). But the *Grochowski* court observed that "the plaintiffs did not bring

---

[4] The court cited *Operating Engineers Health & Welfare Trust Fund v. JWJ Contracting Co.*, 135 F.3d 671 (9th Cir. 1998), *Chan v. City of New York*, 1 F.3d 96 (2d Cir. 1993), and *Weber v. Heat Control Co.*, 728 F.2d 599 (3d Cir. 1984). Other courts have reached the same conclusion. *See United States ex rel. Glynn v. Capeletti Bros., Inc.*, 621 F.2d 1309 (5th Cir. 1980); *Bane v. Radio Corp. of Am.*, 811 F.2d 1504 (4th Cir. 1987) (unpublished table decision); *United States ex rel. Bradbury v. TLT Constr. Corp.*, 138 F. Supp. 2d 237 (D.R.I. 2001); *Peatross v. Global Assocs.*, 849 F. Supp. 746 (D. Haw. 1994); *see also Johnson v. Prospect Waterproofing Co.*, 813 F. Supp. 2d 4, 8–9 (D.D.C. 2011) (declining to decide the issue but noting D.C. Circuit precedent cuts against recognition of a private right of action); *Ibrahim v. Mid-Atl. Air of DC, LLC*, 802 F. Supp. 2d 73, 76 (D.D.C. 2011) (same). And the Supreme Court, while leaving the precise question open, has held that the DBA "does not confer a private right of action for back wages under a contract that administratively has been determined *not* to call for Davis-Bacon work." *Univs. Research Ass'n, Inc. v. Coutu*, 450 U.S. 754, 767–68 (1981) (emphasis added).

At least two courts have held to the contrary. *See McDaniel v. Univ. of Chicago*, 548 F.2d 689 (7th Cir. 1977); *Norling v. Valley Contracting & Pre-Mix*, 773 F. Supp. 186 (D.N.D. 1991).

10

a § 1983 action" but "instead brought state-law claims," and held that the DBA—while it would presumably permit a § 1983 claim—forbade state common-law claims because "[u]nlike claims brought under § 1983, there is no presumption in favor of a right to bring suit for such common law claims." *Id.* at 85–86. The court then held that the FLSA—which, like § 1983, creates a private right of action—could not be used to "circumvent the procedural requirements of the DBA." *Id.* at 87. Accordingly, it limited recovery under the FLSA to time-and-a-half the hourly rates *actually paid*, rather than time-and-a-half the prevailing rates mandated under the DBA. *Id.*[5]

But *Grochowski* has attracted strong criticism.[6] And the *Grochowski* majority intimated that a § 1983 action to enforce the DBA might be viable had the plaintiffs alleged it. *Grochowski*, 318 F.3d at 85–86; *cf. Chan*, 1 F.3d at 102–03 (rejecting an implied right of action

---

[5] At least two other judges from this Court have reached similar conclusions. In *Johnson v. Prospect Waterproofing Co.*, Judge Berman Jackson assumed (without deciding) that there is no private right of action under the DBA and reasoned that "plaintiffs cannot get around the administrative prerequisites of the [DBA] simply by dressing up their claim in new language and asserting that it arises under state law." 813 F. Supp. 2d 4, 9 (D.D.C. 2011) (agreeing with *Grochowski*). She accordingly dismissed claims asserted under the DCMWA, the DCWPCL, and common law. And in *Ibrahim v. Mid-Atlantic Air of DC, LLC*, Judge Huvelle followed the same path: assuming (without deciding) that there is no private right of action under the DBA and then holding that the plaintiff could not "evade the requirement that he seek administrative relief simply by arguing that his claims arise under D.C. law." 802 F. Supp. 2d 73, 76 (D.D.C. 2011).

[6] *See Grochowski*, 318 F.3d at 90 (Lynch, J., dissenting) (accusing the majority of deploying "a slogan, not an argument," to reach "a very peculiar result"). The Seventh Circuit, in a case dealing with private rights of action under other federal and state laws, wrote that "[i]t seems to us that the *Grochowski* end-run theory is really just an 'end-run' around well-established preemption doctrine, and we decline to adopt it." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 584 (7th Cir. 2012). District courts in the Second Circuit have followed *Grochowski* only begrudgingly. *See Isufi v. Prometal Constr., Inc.*, 927 F. Supp. 2d 50, 52 (E.D.N.Y. 2013) ("Even though Judge Lynch's dissent in *Grochowski* appears to be correct, federal courts operate within a hierarchical system."). And the New York Court of Appeals called the decision "flawed." *Cox v. NAP Constr. Co.*, 891 N.E.2d 271, 276 (N.Y. 2008).

under HCDA but recognizing right of action under § 1983). Like Judge Lynch, the Court is "at a loss to see how the same scheme that is not sufficiently comprehensive to demonstrate a congressional intent to preclude § 1983 relief *is* sufficiently comprehensive to preempt state remedies." *Grochowski*, 318 F.3d at 90 (Lynch, J., dissenting).

The employers also rely on the D.C. Circuit's decision in *Danielsen v. Burnside-Ott Aviation Training Center, Inc.*, 941 F.2d 1220 (D.C. Cir. 1991), but *Danielsen* does not resolve this case. *Danielsen* addressed the interaction between the Service Contract Act (SCA)—a law largely parallel to the DBA, but for service rather than construction contracts—and the Racketeer Influenced and Corrupt Organizations Act (RICO). Employees of service corporations sued their employers under RICO and for common-law fraud. To satisfy RICO's "pattern of racketeering activity" element, the employees alleged that their employers—by paying them the prevailing rates for technicians instead of the higher prevailing rates for aircraft workers, and by using the mails in furtherance of the (allegedly) misclassified contracts—had thereby committed federal mail and wire fraud. *Danielsen*, 941 F.2d at 1226. At the time the suit commenced, the proper classifications and corresponding wage rates were the subject of administrative proceedings before the Department of Labor. *Id.* The D.C. Circuit concluded that "the statutory scheme for administrative relief set forth by Congress in the SCA leaves no room for a RICO action on the present allegations" because "the implication of a private right under the SCA would undercut the specific remedy prescribed by Congress" and because "the ingenious pleading of the action in RICO terms rather than in straight SCA language cuts against the implication of the right of action rather than in its favor." *Id.* at 1226–28; *cf. also Dist. Lodge No. 166, Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. TWA Servs., Inc.*, 731 F.2d 711 (11th Cir. 1984)

12

(no private right of action under SCA); *Miscellaneous Serv. Workers, Drivers & Helpers, Teamsters Local No. 427 v. Philco-Ford Corp., WDL Div.*, 661 F.2d 776 (9th Cir. 1981) (same).

But employee classification, along with the corresponding prevailing wage–setting, is the province of the Department of Labor. *See* 41 U.S.C. § 6703. Challenges to the Department's classification and wage-setting decisions are channeled administratively through the Department's Wage and Hour Division and Wage Appeals Board. *See* 29 C.F.R. § 5.13 (the Department's final determinations of wage rates, "including the classifications therein," are "authoritative"); *Danielsen*, 941 F.2d at 1223 (describing the process). And at the time the *Danielsen* plaintiffs filed suit, the Department was in the process of adjudicating such a challenge. *Danielsen*, 941 F.2d at 1225–26. The plaintiffs' RICO suit thus would have forced the court to make the very administrative determinations about employee classification and wage-setting that Congress delegated to the Department of Labor: after all, there is no RICO violation without a predicate crime, and the only way to know whether a predicate crime existed would have been to resolve the parties' classification dispute.

Garcia's claims, by contrast, would not short-circuit the DBA's administrative process or embroil the Court in legal determinations Congress intended the Department of Labor to resolve. First, Garcia's complaint could be construed—and so, on a motion to dismiss, must be construed—to avoid the DBA entirely. Garcia alleges that the employers here agreed to hire and pay him "as a carpenter" and that "he understood from this that he would be paid at least the legal prevailing wage for a carpenter." Compl. ¶¶ 21–22. That the DBA may have provided the basis for the parties' alleged "underst[anding]" does not transform the agreement into anything other than an ordinary contract; on this reading, Garcia is not suing for the DBA-mandated rates *per se*, but rather for the rates his employers agreed to pay him. *Cf. Perez*, 221 F. Supp. 3d at

13

149 ("The Court concludes that no matter how DOL would classify the plaintiffs' correct wage rate, they are entitled to the wage rate that they were promised upon being hired and that they reasonably expected applied over the duration of their work on the Project.").

Second, even if Garcia's complaint were construed to demand the DBA-mandated rates as a matter of law and irrespective of his agreement with his employers, this case still would not present any *Danielsen* problem because—at this stage in the proceedings—there is no dispute over worker classifications or corresponding rates. Garcia alleges that both parties understood him to be hired "as a carpenter." Compl. ¶ 21. He further alleges, and does not question, the hourly rates and fringe benefits that the Department has already set for carpenters. Compl. ¶ 132. At this stage, where the employers have not questioned Garcia's proper classification or the prevailing rates applicable to that classification, adjudicating Garcia's claims would not require any classification or wage-setting decisions of the kind Congress has reserved for the Department of Labor.

In sum, in the absence of controlling precedent directly on point, the Court concludes that the DBA does not foreclose Garcia's claims.

## CONCLUSION

For the foregoing reasons, the Court denies the employers' motion to dismiss. A separate order consistent with this decision accompanies this memorandum opinion.

DABNEY L. FRIEDRICH
United States District Judge

Date: August 24, 2018